Howard J. McClure, Esq.
Aubrey J. McClure Campbell, Esq.
Howard J. McClure & Associates
743 N. A St.
Oxnard, CA 93030
Telephone: (805) 278-6117
Facsimile: (805) 278-6119
aubrey@howardjmcclurelaw.com
Attorneys for Petitioner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| CASTILLO-HERNANDEZ, Anthony, a.k.a. Antonio Castillo Hernandez,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN, Adelanto ICE Processing Center; TODD BLANCHE, Attorney General of The United States; MARKWAYNE MULLIN, Secretary of Homeland Security<br><br>Respondents. | Case No.<br><br>PETITION FOR WRIT OF HABEAS CORPUS<br><br>28 U.S.C. § 2241<br><br>IMMIGRATION CASE |

## INTRODUCTION

1. The Immigration and Nationality Act ("INA") authorizes the civil detention of noncitizens through three distinct statutory schemes: 8 U.S.C. § 1226, which governs noncitizens in the interior of the United States whose removal proceedings are pending; 8 U.S.C. § 1225(b), which governs noncitizens seeking admission at the border; and 8 U.S.C. § 1231, which governs noncitizens subject to a final order of removal. Each scheme carries its own procedures and its own limits. None permits the Department of Homeland Security ("DHS") to hold a person without any custody determination on the strength of what DHS says it intends to do next.

2. Petitioner Anthony Castillo-Hernandez ("Mr. Castillo-Hernandez") is a twenty-three-year-old citizen of Guatemala who has lived in Oxnard, California, with his mother since 2023, and who was seized by masked, armed U.S. Immigration and Customs Enforcement ("ICE") officers on the street outside his apartment complex in Oxnard on August 10, 2026. He was not apprehended at or near the border. DHS did not process him for expedited removal.

3. Instead, DHS issued a Notice to Appear and placed him in removal proceedings under 8 U.S.C. § 1229a before the Adelanto Immigration Court, charging him as a noncitizen present in the United States without admission or

parole. He has been detained at the Adelanto ICE Processing Center since August 10, 2026. He has never received a custody determination of any kind.

4. Three weeks after filing its charging document, DHS changed course. It moved to dismiss the very proceedings it had initiated, asserting that the Notice to Appear had been "improvidently issued" because Mr. Castillo-Hernandez is "subject to reinstatement" of an expedited removal order executed in July 2023. The Immigration Judge granted the motion on September 15, 2026. Mr. Castillo-Hernandez timely appealed to the Board of Immigration Appeals ("BIA") on September 17, 2026, and that appeal remains pending. The dismissal order is therefore not final, and the removal proceedings remain pending.

5. Critically, DHS has not reinstated anything. On information and belief, no immigration officer has made the determination required by 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8; no Notice of Intent/Decision to Reinstate Prior Order (Form I-871) has issued; and Mr. Castillo-Hernandez has never been afforded notice of, or an opportunity to contest, any such determination. There is no order of removal in effect against him. The 2023 order was executed when he was removed to Guatemala on July 31, 2023, and it does not, of its own force, authorize his present detention.

6. The result is that Respondents are holding Mr. Castillo-Hernandez under a statute that does not apply to him or, more precisely, under no statute at all.

He is not subject to § 1231, because there is no final order of removal. He is not subject to § 1225(b)(1), because DHS never initiated expedited removal. And he is not subject to mandatory detention under § 1225(b)(2)(A), because the Ninth Circuit has now squarely held that provision reaches only noncitizens seeking entry at the border, not those apprehended in the interior. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). The only detention authority that could apply to Mr. Castillo-Hernandez is 8 U.S.C. § 1226(a), and Respondents have never invoked it, never issued the warrant it requires, and never made the custody determination it presupposes.

7. Independently, the manner in which Mr. Castillo-Hernandez was taken into custody violated the Fourth Amendment and the statute and regulation that govern warrantless immigration arrests. Four masked, armed men in unmarked vehicles without license plates seized him on a public sidewalk twenty meters from his home, displayed no warrant, asked him nothing that could bear on whether he was likely to escape before a warrant could be obtained, and laughed when he asked who they were.

8. On information and belief, the officers had no specific, articulable facts justifying the seizure and made no particularized determination of escape risk, as 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) require. Three weeks ago this Court preliminarily enjoined exactly this practice, holding that a warrantless

immigration arrest in this District requires a prearrest, individualized determination that the person is likely to escape, and certifying a class of persons arrested in this District without a warrant and without such a determination since June 6, 2025, a class that on information and belief includes Mr. Castillo-Hernandez. *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at 20, 31 (C.D. Cal. Sept. 2, 2026).

9. This Court also recently ordered the immediate release of another Oxnard resident whose detention began with a warrantless arrest of the same character, holding that the appropriate remedy for such violations is to restore the petitioner to the position he occupied before the unlawful arrest. *Juarez Perez v. Warden, Adelanto ICE Processing Center*, No. 5:26-cv-05074-WLH-DTB, Dkt. No. 9 (C.D. Cal. Sept. 24, 2026) (Exhibit H). The same remedy is warranted here.

10. Mr. Castillo-Hernandez's detention began with an unlawful arrest and has continued for seven weeks without any statutory authority and without any determination by any official that it is warranted. Custody that was unlawful at its inception and remains unauthorized cannot be cured by an administrative hearing on whether it should continue; the remedy is the one the writ has always provided. He seeks an order directing his immediate release.

## JURISDICTION

11. Petitioner Castillo-Hernandez is in the physical custody of Respondents. Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California.

12. This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause). *See INS v. St. Cyr*, 533 U.S. 289, 300–01 (2001).

13. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

14. Venue is proper in the Central District of California, Eastern Division, under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. Petitioner is detained in an immigration detention facility in San Bernardino County at the direction of, and is in the immediate custody of, Respondent Warden of the Adelanto ICE Processing Center. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–47 (2004) (immediate-custodian rule and district-of-confinement principle).

15. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## REQUIREMENTS OF 28 U.S.C. § 2243

16. The Court must grant the petition for a writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

17. Habeas corpus is "perhaps the most important writ known to the constitutional law," affording "a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

18. Petitioner Anthony Castillo-Hernandez is a citizen of Guatemala who has resided in Oxnard, California, since 2023. He has been in immigration detention since August 10, 2026, and is currently detained at the Adelanto ICE Processing Center ("Adelanto"). After taking custody of Petitioner, ICE has not afforded him a custody determination under 8 U.S.C. § 1226(a) or 8 C.F.R. § 236.1(c)(8).

19. Respondent, Warden of the Adelanto ICE Processing Center, is Petitioner's immediate custodian. As Warden, he has direct physical custody of Petitioner and is responsible for the day-to-day operation of the facility in which Petitioner is detained. He is sued in his official capacity.

20. Respondent, Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations division, is Petitioner's custodian by virtue of his supervision of the Adelanto ICE Processing Center. As Director, he is responsible for the detention and removal of noncitizens within the Los Angeles Field Office's area of responsibility. He is sued in his official capacity.

21. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Petitioner's detention. Mr.

Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

22. Respondent Department of Homeland Security ("DHS") is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

23. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates are component agencies. He is sued in his official capacity.

24. Respondent Executive Office for Immigration Review ("EOIR") is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including custody determinations.

## FACTS

### A. Background and the July 2023 Expedited Removal

25. Mr. Castillo-Hernandez was born on December 30, 2002, in Mazatenango, Suchitepéquez, Guatemala, and is a citizen of Guatemala. (Exhibit C at 13.) He has no criminal history. (Exhibit C at 15.)

26. On July 20, 2023, at the age of twenty, Mr. Castillo-Hernandez crossed the Rio Grande near Laredo, Texas, and was apprehended by the Border

Patrol the same day, roughly fifteen miles from the border. (Exhibit C at 13–14.) On July 24, 2023, a Border Patrol agent issued a Notice and Order of Expedited Removal (Form I-860) under 8 U.S.C. § 1225(b)(1), finding him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Exhibit C at 7.) He was served with a Notice to Alien Ordered Removed (Form I-296) imposing a five-year bar on reentry. (Exhibit C at 6.) All records checks were negative. (Exhibit C at 14.)

27. On July 31, 2023, DHS executed the expedited removal order and removed Mr. Castillo-Hernandez to Guatemala by charter flight from Laredo, Texas. (Exhibit C at 6 ("Verification of Removal").) The order was thereby fully executed.

28. Mr. Castillo-Hernandez left Guatemala again in or about September 2023 and re-entered the United States without inspection shortly thereafter. (Exhibit G (Declaration of Antonio Castillo Hernandez) at 1.) By the end of 2023 he was living in Oxnard, California, and working for a staffing company, Skillset Group, LLC, which issued him a Form W-2 for tax year 2023 at his Oxnard address. (Exhibit F at 2.) He has resided continuously at the same address, 1719 South Oxnard Boulevard, Apartment 314, Oxnard, California, since at least 2023, together with his mother, Yaquelin Siomara Hernández López. (Exhibit F at 3–7 (Medi-Cal notices addressed to Petitioner and to his mother at that address, November 2024 through November 2025); *id.* at 8 (mother's Guatemalan birth

certificate).) He was enrolled in Medi-Cal through Ventura County beginning November 1, 2024, with his mother designated as his authorized representative. (Exhibit F at 7.) Mr. Castillo-Hernandez is known in these records by the name Antonio Castillo Hernandez, the name he signed on the NTA. (Exhibit B at 3.)

**B. The August 2026 Arrest and Removal Proceedings Under 8 U.S.C. § 1229a**

29. On July 27, 2026, roughly two weeks before his arrest, Mr. Castillo-Hernandez was treated at St. John's Regional Medical Center in Oxnard for a left shoulder subluxation and fitted with a shoulder immobilizer. (Exhibit F at 9.)

30. On August 10, 2026, Mr. Castillo-Hernandez worked a full day at his construction job and returned home at about 4:00 p.m. At about 5:30 p.m., he left his apartment complex in Oxnard on foot, walking toward a nearby McDonald's. (Exhibit G at 2.) Roughly twenty meters from the complex, two vehicles without license plates stopped in front of and behind him. Four masked men carrying handguns got out, grabbed him, and handcuffed him, injuring his finger. Only one of the men wore anything identifying him as ICE. The officers displayed no warrant, did not explain why they were arresting him, and laughed when he asked them to identify themselves. He did not resist. (Exhibit G at 3.) He was taken to Camarillo, held for about two hours, transported to a facility in Los Angeles, and then transferred to Adelanto. (*Id.*) He was not apprehended at the border, at a port

of entry, or in the course of attempting to enter the United States; he was apprehended on the street outside his home in the city where he has lived for nearly three years.

31. Nine days later, on August 19, 2026, DHS issued a Notice to Appear (Form I-862) ("NTA") in Camarillo, California, and personally served it on Mr. Castillo-Hernandez the same day. (Exhibit B at 1, 3.) The NTA initiated removal proceedings under 8 U.S.C. § 1229a. It designated Mr. Castillo-Hernandez as "an alien present in the United States who has not been admitted or paroled," not as an arriving alien, and charged him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). (Exhibit B at 1.) The NTA alleged that he entered the United States "at or near an unknown place, on or about an unknown date." (*Id.*)

32. DHS did not process Mr. Castillo-Hernandez for expedited removal under 8 U.S.C. § 1225(b)(1). The NTA form's boxes indicating that a § 1225(b)(1) order had been vacated, and that the notice issued following a credible fear finding, are unchecked. (Exhibit B at 1.) DHS did not serve any notice of intent to reinstate the 2023 order. Instead, DHS elected to place him in full removal proceedings before an Immigration Judge.

33. DHS filed the NTA with the Adelanto Immigration Court on August 21, 2026. (Exhibit B at 1 (EOIR upload stamp).) The court set an initial hearing for

September 1, 2026. On DHS's motion, the Immigration Judge continued that hearing to September 15, 2026. (Exhibit E.)

34. After taking Mr. Castillo-Hernandez into custody, ICE made no individualized custody determination. On information and belief, ICE issued no Notice of Custody Determination. He has never received the individualized custody determination that 8 C.F.R. § 236.1(c)(8) requires for noncitizens detained under § 1226(a).

35. On September 10, 2026, DHS moved to dismiss the removal proceedings without prejudice under 8 C.F.R. §§ 239.2(a)(6) and 1239.2(c). (Exhibit C at 2–3.) DHS contended that the NTA was "improvidently issued" because Mr. Castillo-Hernandez "is subject to reinstatement" of the July 2023 expedited removal order under 8 C.F.R. § 241.8(a), citing *Matter of W-C-B-*, 24 I&N Dec. 118 (BIA 2007). (Exhibit C at 3.) The only materials DHS attached were the 2023 expedited removal records. (Exhibit C at 5–15.) DHS attached no Form I-871, no reinstatement determination, and no other evidence that any immigration officer had actually made the findings required by 8 C.F.R. § 241.8(a).

36. On September 15, 2026, Immigration Judge Patrick Barrett granted the motion and dismissed the proceedings without prejudice, stating that the NTA "was improvidently issued as Respondent is subject to reinstatement of a prior

removal order." (Exhibit A at 4.) Mr. Castillo-Hernandez reserved appeal, and the Immigration Judge set the appeal deadline for October 15, 2026. (*Id.*)

37. On September 17, 2026, Mr. Castillo-Hernandez, through counsel, filed a Notice of Appeal (Form EOIR-26) with the BIA, which EOIR acknowledged the same day. (Exhibit D.) Because a timely appeal has been filed, the Immigration Judge's decision is not final. *See* 8 C.F.R. § 1003.39 (decision of the Immigration Judge becomes final only upon waiver of appeal or expiration of the time to appeal without an appeal being filed). The removal proceedings DHS initiated under 8 U.S.C. § 1229a therefore remain pending before EOIR.

38. As of the filing of this Petition, and on information and belief, DHS has not reinstated the 2023 expedited removal order. No immigration officer has determined, as 8 C.F.R. § 241.8(a) requires, that Mr. Castillo-Hernandez is the subject of a prior order, that he was in fact removed under it, and that he unlawfully reentered; he has not been served with written notice of any such determination; and he has not been given the opportunity, guaranteed by 8 C.F.R. § 241.8(b), to make a written or oral statement contesting it. No Form I-871 has issued. No order of removal is currently in effect against him.

39. Mr. Castillo-Hernandez fears returning to Guatemala. Before he left, he supervised roughly thirty officers for a private security company in Quetzaltenango and was personally involved in the arrests of individuals he

understood to be members of organized criminal groups; he fears those individuals will retaliate against him. He is also a practitioner of Mayan spirituality who was regarded as a Mayan priest, has been stigmatized for those beliefs, and has witnessed violence against Mayan practitioners during religious ceremonies. (Exhibit G at 1–2.) He intends to seek protection from removal on these grounds. If DHS were to reinstate the 2023 order, he would be entitled to a reasonable fear interview and, upon a positive determination, to withholding-only proceedings before an Immigration Judge. 8 C.F.R. §§ 208.31, 241.8(e).

**C. Mr. Castillo-Hernandez's Detention and Equities**

40. Mr. Castillo-Hernandez has now been detained at Adelanto for more than seven weeks without any determination by any official as to whether his detention is warranted—that is, whether he presents a danger to the community or a risk of flight.

41. Mr. Castillo-Hernandez is neither a danger to the community nor a flight risk. He has no criminal history in the United States or elsewhere. (Exhibit C at 15; Exhibit G at 3.) Before his arrest he was working in construction, and he hopes to become a United States citizen and to serve in the United States Army. (Exhibit G at 3.) He has lived at the same address in Oxnard, California, with his mother, for nearly three years, a residence documented by federal tax, county benefits, and medical records spanning 2023 through 2026. (Exhibit F.) He is a

registered member of Our Lady of Guadalupe Catholic Church in Oxnard, where he practices his faith; the parish pastor, Fr. Manuel Vázquez-Bravo, MSpS, has confirmed in writing his membership and his residence at the Oxnard address. (Exhibit F at 1 (letter dated September 18, 2026).) His mother is willing to serve as his sponsor and to ensure his attendance at all future proceedings. He is represented by counsel and is actively litigating his appeal before the BIA.

42. Without relief from this Court, Mr. Castillo-Hernandez faces the prospect of continued, indefinite detention while his BIA appeal is adjudicated, separated from his family and community, without any custody determination and without any lawful basis.

## LEGAL FRAMEWORK

43. The INA prescribes three basic forms of detention for noncitizens in removal proceedings or subject to removal.

44. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens who are in the United States and in removal proceedings under 8 U.S.C. § 1229a. Section 1226(a) provides that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Detention under § 1226(a) is discretionary and procedurally constrained: arrest is authorized "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a), and ICE must

make an individualized custody determination, 8 C.F.R. § 236.1(c)(8). *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(c) mandates detention only of noncitizens who fall within specified criminal and security categories. Section 1226 is the statute that, for three decades and across every administration until 2025, was applied to noncitizens who, like Petitioner, were present in the interior of the United States and charged with inadmissibility under § 1182(a)(6)(A)(i). *See Rodriguez Vazquez v. Bostock*,183 F.4th 1160 (9th Cir. 2026).

45. Second, 8 U.S.C. § 1225(b) provides for the mandatory detention of certain noncitizens seeking admission. Section 1225(b)(1) governs expedited removal, a summary process that DHS may apply to noncitizens arriving in the United States and, in its discretion, to certain noncitizens who cannot establish two years of continuous physical presence. 8 U.S.C. § 1225(b)(1)(A)(i), (iii); *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). Section 1225(b)(2)(A) mandates the detention, pending § 1229a proceedings, of "an alien seeking admission" who "is not clearly and beyond a doubt entitled to be admitted." The Supreme Court has described § 1225(b) as applying "primarily to aliens seeking entry into the United States," and § 1226 as applying "to aliens already present in the United States." *Jennings*, 583 U.S. at 297, 303. In *Rodriguez Vazquez*, the Ninth Circuit held that § 1225(b)(2)(A) applies only to noncitizens

seeking entry at the border, and that noncitizens present without admission who are apprehended in the interior are detained under § 1226. Slip op. at 10, 25–26.

46. Third, 8 U.S.C. § 1231 governs the detention of noncitizens who are subject to a final order of removal. The "removal period" under § 1231(a)(1) begins on the latest of the date the order of removal becomes administratively final, the date of a reviewing court's final order if a stay was entered, or the date of release from non-immigration detention. 8 U.S.C. § 1231(a)(1)(B). Section 1231(a)(5) provides for the reinstatement of a prior order of removal against a noncitizen who has reentered the United States illegally after removal, but a prior order is reinstated only when an immigration officer makes the determination that the regulations require, after notice and an opportunity to contest. 8 C.F.R. § 241.8(a)–(c); *see Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487, 493–97 (9th Cir. 2007) (en banc) (explaining that an executed removal order may not be executed again against a noncitizen who reenters unless an authorized official reinstates it, and describing the § 241.8 procedures); *Alcala v. Holder*, 563 F.3d 1009, 1013 (9th Cir. 2009) ("Reinstatement of a prior order of removal is not automatic."). Where a prior order has actually been reinstated, the Ninth Circuit treats the resulting detention as governed by § 1231. *Padilla-Ramirez v. Bible*, 882 F.3d 826, 830–34 (9th Cir. 2018).

47. Separate from the question of which detention statute applies, federal law limits the authority of immigration officers to seize and arrest noncitizens without a warrant. "The federal statutory structure instructs when it is appropriate to arrest a [noncitizen] during the removal process," and that authority is "more limited" where no warrant has issued. *Arizona v. United States*, 567 U.S. 387, 407–08 (2012). An immigration officer may arrest a noncitizen without a warrant only if the officer "has reason to believe" both that the noncitizen is in the United States in violation of the immigration laws and that he "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see* 8 C.F.R. § 287.8(c)(2)(ii). The escape-risk determination must be particularized to the person arrested. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

48. An investigatory stop by immigration officers is a seizure under the Fourth Amendment that requires "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" of unlawful presence; Hispanic appearance, alone or combined with presence in an area where noncitizens are thought to live, is not enough. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 886–87 (1975); *Nicacio v. INS*, 797 F.2d 700, 703 (9th Cir. 1986).

49. On July 8, 2025, ICE issued the "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "DHS Policy"), which directed ICE personnel to treat all noncitizens who entered without

inspection—regardless of when they were apprehended or how long they had lived in the United States—as subject to mandatory detention under § 1225(b)(2)(A). The BIA adopted that interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

50. The federal courts have overwhelmingly rejected the DHS Policy. In *Rodriguez Vazquez*, the Ninth Circuit affirmed a class-wide judgment holding that unadmitted noncitizens apprehended in the interior are not subject to § 1225(b)(2)(A), reasoning that the government's reading rendered the statutory phrase "seeking admission" superfluous, conflicted with the ordinary meaning of that phrase, was in tension with *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc), would render § 1226(c)(1)(E) largely superfluous, and was contradicted by thirty years of consistent Executive Branch practice. Slip op. at 26–66. That decision is binding on this Court.

## ARGUMENT

### I. Section 1226(a), Not § 1225(b)(2)(A), Governs Mr. Castillo-Hernandez's Detention.

51. Mr. Castillo-Hernandez is a noncitizen present in the United States who was arrested in the interior, charged with inadmissibility under § 1182(a)(6)(A)(i), and placed in removal proceedings under § 1229a. That is

precisely the class of noncitizens the Ninth Circuit addressed in *Rodriguez Vazquez*, and precisely the class to which § 1226(a) has been applied since 1996. He is detained "pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). No such decision has been made: the Immigration Judge did not order him removed, and the dismissal order is on appeal.

52. Section 1225(b)(2)(A) does not apply to him. Under *Rodriguez Vazquez*, that provision reaches only noncitizens seeking entry at the border. Mr. Castillo-Hernandez was not seeking entry when he was seized on the street outside his apartment in Oxnard; he had been living in California for nearly three years. The DHS Policy and *Matter of Yajure Hurtado* cannot alter that conclusion, because an agency interpretation cannot override the statute as construed by the court of appeals.

53. Nor is Mr. Castillo-Hernandez subject to mandatory detention under § 1226(c). He has no criminal history; he has never been charged with, arrested for, or convicted of any offense enumerated in § 1226(c)(1)(E), as amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025); and DHS has never asserted that any subsection of § 1226(c) applies to him.

**II. DHS's Stated Intention to Reinstate a Prior Order Is Not a Source of Detention Authority.**

54. Respondents will presumably argue that Mr. Castillo-Hernandez is "subject to reinstatement" and therefore detained under § 1231. That argument fails because § 1231 authorizes detention only of a noncitizen who is actually subject to an order of removal, and no such order exists.

55. Section 1231(a) detention is keyed to the "removal period," which begins when an order of removal "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). The July 2023 expedited removal order was executed on July 31, 2023, when DHS removed Mr. Castillo-Hernandez to Guatemala. An executed order has been carried out; it does not linger as a present authorization to detain a person who later returns.

56. Section 1231(a)(5) permits DHS to reinstate a prior order against a noncitizen who has reentered illegally after removal, but reinstatement is not automatic. The regulation implementing § 1231(a)(5) requires that an immigration officer affirmatively determine (1) the identity of the noncitizen, (2) that the noncitizen was subject to a prior order of removal, and (3) that the noncitizen unlawfully reentered the United States. 8 C.F.R. § 241.8(a). The officer must provide written notice of the determination, and the noncitizen must be given an opportunity to make a written or oral statement contesting it. 8 C.F.R. § 241.8(b).

Only if the officer makes the required findings is the noncitizen "removed under the previous order of exclusion, deportation, or removal." 8 C.F.R. § 241.8(c). The Ninth Circuit, sitting en banc, has explained that once a removal order is executed, it may not be executed again against a noncitizen who reenters unless it is reinstated by an authorized official, and that reinstatement is a determination made by an immigration officer through the § 241.8 procedures, reviewable for the three factual predicates. *Morales-Izquierdo*, 486 F.3d at 487, 495–96. "Reinstatement of a prior order of removal is not automatic." *Alcala*, 563 F.3d at 1013.

57. None of that has occurred here. DHS has represented to the Immigration Judge that Mr. Castillo-Hernandez "is subject to reinstatement," but DHS attached no reinstatement determination to its motion, and none has been served on him. (Exhibit C.) A prediction by DHS counsel that DHS may in the future exercise its authority under § 1231(a)(5) is not an order of removal, does not start a removal period, and does not authorize detention under § 1231.

58. The Ninth Circuit's decision in *Padilla-Ramirez* confirms the point rather than undermining it. There, the court held that a noncitizen whose prior order had actually been reinstated, and who was in withholding-only proceedings, was detained under § 1231 rather than § 1226. 882 F.3d at 830–34. The premise of that holding was the existence of a reinstated—and therefore administratively

final—order of removal. Absent reinstatement, *Padilla-Ramirez* has no application, and the default rule of § 1226(a) governs.

59. DHS's own charging decision confirms which statute applies. DHS did not serve a Form I-871. It served an NTA, designated Mr. Castillo-Hernandez as a noncitizen "present in the United States who has not been admitted or paroled," charged him under § 1182(a)(6)(A)(i), and filed the NTA with the Immigration Court, thereby vesting jurisdiction in EOIR. (Exhibit B at 1); 8 C.F.R. § 1003.14(a). Having chosen to proceed under § 1229a, DHS subjected Mr. Castillo-Hernandez to the detention regime that accompanies § 1229a proceedings, which is § 1226. DHS cannot invoke the detention consequences of a reinstatement it has not effected while simultaneously pursuing—and appealing the dismissal of—§ 1229a proceedings.

60. Finally, the Immigration Judge's dismissal order does not change the analysis. That order is not final while Mr. Castillo-Hernandez's timely appeal is pending, 8 C.F.R. § 1003.39, and the BIA may reverse it. Until the BIA rules, the proceedings DHS initiated remain pending, and Mr. Castillo-Hernandez remains detained "pending a decision on whether [he] is to be removed." 8 U.S.C. § 1226(a). Even if the BIA ultimately affirms the dismissal, the result would be that no removal proceedings are pending and no removal order exists—not that a § 1231 removal period has begun. Should DHS thereafter reinstate the 2023 order,

Mr. Castillo-Hernandez reserves all rights to contest that determination, including by petition for review under 8 U.S.C. § 1252, and to seek protection from removal.

**III. Expedited Removal Under § 1225(b)(1) Does Not Apply.**

61. Section 1225(b)(1) mandates detention only of noncitizens whom DHS has actually placed in expedited removal proceedings, and only while those proceedings are pending. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). The only expedited removal order in Mr. Castillo-Hernandez's history was issued at the border in Laredo, Texas, in July 2023 and executed within a week when he was removed to Guatemala; the detention authority that accompanied it ended when the order was executed. (Exhibit C at 6–7.) That 2023 border proceeding has no bearing on the authority for a separate arrest in the interior of the United States three years later. DHS did not place him in expedited removal in 2026. The NTA reflects that no expedited removal order was issued or vacated in 2026, and DHS has never invoked § 1225(b)(1) with respect to Mr. Castillo-Hernandez's 2026 arrest. (Exhibit B at 1.) DHS instead exercised its discretion to place him in § 1229a proceedings. Nor could DHS have invoked expedited removal: that process is available in the interior only against a noncitizen who cannot affirmatively show continuous physical presence for the two years preceding the determination of inadmissibility, 8 U.S.C. § 1225(b)(1)(A)(iii)(II), and Mr. Castillo-Hernandez's continuous presence in Oxnard since the fall of 2023 is documented by federal tax,

county benefits, and medical records. (Exhibit F.) In any event, DHS did not exercise any such authority, and § 1225(b)(1) cannot supply after-the-fact justification for a detention that DHS itself did not effect under that provision.

**IV. Detention Without Statutory Authority, and Without Any Custody Determination, Violates the INA and the Due Process Clause.**

62. Because § 1231 and § 1225(b) do not apply, either § 1226(a) governs—in which case Respondents were required to arrest him on a warrant and make an individualized custody determination, and did neither—or no statute authorizes his detention at all. In either case the detention is unauthorized and he must be released. Respondents cannot hold a person in civil confinement on the basis of an anticipated future exercise of authority. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (civil detention implicates the "heart of the liberty" the Due Process Clause protects and must be justified by a sufficiently strong special justification and adequate procedural protections).

63. Even under § 1226(a), the regulations require ICE to make an individualized custody determination and to serve notice of it. 8 C.F.R. § 236.1(c)(8), (d)(1). ICE did neither. Mr. Castillo-Hernandez has been held for more than seven weeks without any official ever considering whether he is a flight risk or a danger to the community.

64. The Due Process Clause of the Fifth Amendment protects noncitizens present in the United States from deprivation of liberty without due process of law. *Zadvydas*, 533 U.S. at 693. Detention without any individualized determination of dangerousness or flight risk, under a statute that does not apply, deprives Mr. Castillo-Hernandez of his liberty without the process the Constitution requires.

**V. Exhaustion Is Not Required, and Would in Any Event Be Futile.**

65. No statute requires a noncitizen challenging the legal basis for his immigration detention to exhaust administrative remedies before seeking habeas relief under 28 U.S.C. § 2241. Any exhaustion requirement is prudential only, and a court may waive it where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

66. No administrative remedy exists for the relief Mr. Castillo-Hernandez seeks. No Immigration Judge or BIA panel has authority to adjudicate whether his seizure and warrantless arrest complied with the Fourth Amendment and § 1357(a)(2), or to order his release on that basis. Nor can the immigration court determine which detention statute applies to him: the same Immigration Judge has already accepted DHS's representation that he "is subject to reinstatement of a

prior removal order" and dismissed his proceedings on that basis, (Exhibit A at 4), and under Respondents' theory a person subject to a reinstated order is detained under § 1231, over which the Immigration Judge has no custody jurisdiction. *See Padilla-Ramirez*, 882 F.3d at 830–34.

67. The question presented here—whether DHS may detain a person on the basis of an anticipated but unexecuted reinstatement—is a pure question of statutory authority that no Immigration Judge or BIA panel can resolve in Mr. Castillo-Hernandez's favor as against DHS's custody decision. Moreover, any administrative process would take months, during which the harm of unlawful detention would be irremediable. *Hernandez*, 872 F.3d at 988. The need for prompt review is heightened in habeas, which demands a "swift and imperative remedy." *Fay*, 372 U.S. at 400.

**VI. The Warrantless Seizure and Arrest of Mr. Castillo-Hernandez Violated the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8(c)(2)(ii), and Independently Require His Release.**

A. Without a warrant, Respondents' arrest authority was limited to § 1357(a)(2), which requires a prearrest, individualized determination of probable cause that the person is likely to escape.

68. "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Arizona*, 567 U.S. at 407. Section

1226(a) authorizes arrest and detention "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a), meaning a warrant in existence at the time of the arrest. *See Jennings*, 583 U.S. at 302 (§ 1226(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest"). Where "no federal warrant has been issued, those officers have more limited authority." *Arizona*, 567 U.S. at 408. A warrantless arrest is lawful only if the officer "has reason to believe" both that the person is unlawfully present and that he "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). The Ninth Circuit has equated "reason to believe" with probable cause. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). And the escape-risk finding must be particularized to the person arrested, *Ybarra*, 444 U.S. at 91, and made before the arrest on the facts then known to the officer, *see Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

69. Three weeks ago, this Court applied those requirements to the very enforcement operations at issue here. In *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388 (C.D. Cal. Sept. 2, 2026), the Court held that § 1357(a)(2) and its regulation "clearly require two determinations: (1) unlawful presence and (2) likelihood of escape," *id.* at *20*; that the escape-risk determination is "a prerequisite to warrantless arrest," id. *at* 22; that unlawful presence alone cannot satisfy it, because that reading "would render the language

regarding the likelihood of escape determination superfluous," *id.* at 20*;* and that boilerplate escape-risk language combined with no actual analysis "is impermissible," id. *at* 23.

70. The Court preliminarily enjoined Respondents from conducting warrantless civil immigration arrests in this District without a "prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained," and required them to document the specific, particularized facts supporting that determination. *Id.* at 31. The Court certified a class of persons arrested in this District without a warrant and without such an individualized determination since June 6, 2025. On information and belief, Mr. Castillo-Hernandez, arrested without a warrant in Ventura County on August 10, 2026, is a member of that class.

71. The Ninth Circuit reached the same result decades earlier. In *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995), the court held that § 1357(a)(2) "forecloses the possibility of a permissible civil arrest" where the agency "did not allege nor do appellants concede the existence of grounds for a reasonable belief that they were particularly likely to escape." What satisfies the requirement is conduct like that in *United States v. Meza-Campos*, 500 F.2d 33, 34 (9th Cir. 1974), where the person was "extremely nervous," was looking around, and appeared to be "looking for an opportunity to run."

**B. Respondents made no such determination, and the seizure itself lacked reasonable suspicion.**

72. Respondents have never produced a warrant, and none was displayed. (Exhibit G at 3.) Their authority to arrest Mr. Castillo-Hernandez therefore rose or fell with § 1357(a)(2), and on information and belief they satisfied neither prong. The officers asked him nothing before seizing him: not his name, not his citizenship, not whether he had documents, nothing. They therefore could not have formed probable cause of unlawful presence before the seizure, let alone probable cause that he was likely to escape. Nothing about him resembled the *Meza-Campos* subject. He was walking, in daylight, on the sidewalk twenty meters from the apartment where he had lived for nearly three years, having just returned from a full day of work; he did not run, did not resist, and cooperated completely. (Exhibit G at 2–3.) Under *Vasquez Perdomo* and *Mountain High*, that is "no escape risk analysis at all." 2026 WL 2751388, at *19.*

73. The Fourth Amendment independently condemns the seizure. An investigatory stop requires "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" of unlawful presence, *Brignoni-Ponce*, 422 U.S. at 884, and an arrest requires probable cause. The only characteristics apparent to the officers were that Mr. Castillo-Hernandez is Latino and was walking in a predominantly Latino neighborhood, which the

Supreme Court and the Ninth Circuit have squarely held cannot justify a stop. *Id.* at 886–87; *Nicacio*, 797 F.2d at 703. If Respondents contend that the officers possessed articulable facts beyond his appearance and location, they may identify them in their return; Mr. Castillo-Hernandez knows of none, and none was communicated to him. (Exhibit G at 3.)

**C. A post-arrest warrant or custody determination cannot cure the unlawful arrest.**

74. Respondents may point to 8 C.F.R. § 287.3(d), which requires a decision within 48 hours of a warrantless arrest whether the person will remain in custody and whether a notice to appear and warrant of arrest "will be issued." That regulation governs custody processing after an independently authorized warrantless arrest; by its terms it applies to a person "arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act." 8 C.F.R. § 287.3(a); *see* 8 C.F.R. § 287.8(c)(2)(iv). It does not create arrest authority that was absent at the moment of arrest, and *Vasquez Perdomo* squarely rejected the notion that a later-issued warrant can substitute for the required "prearrest individualized determination." 2026 WL 2751388, at *22,* 27, 31. Where the escape-risk exception is unavailable, the government's remedy is to obtain a warrant before arresting, not after. Id. *at* 27. Other courts agree. *See Quezada-Estrada v. Lyons*, 2026 WL 1361880, at 5 (D. Colo. May 15, 2026) ("a post hoc warrant does not permit

detention that arose from an unlawful warrantless arrest”); *M-J-M-A- v. Hermosillo,* 822 F. Supp. 3d 1147, 1158 (D. Or. 2026) (“[a]n arrest cannot be justified after the fact”). A regulation cannot in any event enlarge the arrest authority Congress conferred in §§ 1226(a) and 1357(a)(2). *See Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 395 (2024).

**D. The remedy is release.**

75. These violations are not collateral to Mr. Castillo-Hernandez’s custody; they are its source. Every hour of his detention since August 10, 2026, flows directly from the unlawful seizure and warrantless arrest, which supplies the required nexus between the violation and the custody. *See Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010). His request falls within the historic core of the writ, which “provided a means of contesting the lawfulness of restraint and securing release.” *Thuraissigiam*, 591 U.S. at 117; *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) (“Habeas is at its core a remedy for unlawful executive detention.”); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

76. No administrative custody proceeding could remedy the violation. Such a proceeding decides only whether detention should continue; it cannot supply the arrest authority that was missing when the detention began, and a defective arrest never triggers lawful detention authority under § 1226 in the first place. *See Okeke v. Maldonado*, No. 26-cv-2714 (PKC), 2026 WL 2056904, at 6–7

(E.D.N.Y. July 16, 2026); *Romero-Perez v. Blanche*, No. 2:26-cv-01708-RFB-BNW, 2026 WL 1724752, at 4–5 (D. Nev. June 15, 2026). Courts in this Circuit have accordingly ordered release where the government lacked a valid warrant and could not establish § 1357 authority. *See Urias v. Semaia*, No. 5:26-cv-02753-DTB, 2026 WL 1710375, at 6–7 (C.D. Cal. June 10, 2026); *Gregorio v. LaRose*, No. 3:26-cv-03918-RBM-SBC, 2026 WL 2059095, at 2 (S.D. Cal. July 16, 2026). This Court, on materially similar facts involving another Oxnard resident, held that the appropriate remedy is to place the petitioner in the position he occupied before the violation and ordered immediate release. *Juarez Perez*, Dkt. No. 9, at 12–13 (Exhibit H) (collecting cases); *see also Rosales v. Mullin*, No. 2:26-cv-03657-MAA, 2026 WL 1104776, at *3 (C.D. Cal. Apr. 17, 2026); Perez Bueno v. Janecka*, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at 4 (C.D. Cal. Feb. 5, 2026). Before August 10, 2026, Mr. Castillo-Hernandez was at liberty, living with his mother and working in Oxnard. The remedy is release.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the Immigration and Nationality Act, 8 U.S.C. § 1226(a)

77. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

78. Petitioner is a noncitizen present in the United States who was apprehended in the interior and placed in removal proceedings under 8 U.S.C. § 1229a. His detention is governed by 8 U.S.C. § 1226(a).

79. Section 1225(b)(2)(A) does not apply to Petitioner, who was not seeking admission at the border when he was apprehended.

80. Under § 1226(a) and its implementing regulations, Petitioner could be arrested only on a warrant issued by the Attorney General and detained only following an individualized custody determination by ICE. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(c)(8), (d). Respondents did neither.

81. By detaining Petitioner without a warrant, without any custody determination, and without any lawful statutory basis, Respondents violate the INA, and Petitioner must be released.

## COUNT II

### Detention Without Statutory Authority — 8 U.S.C. §§ 1225(b), 1226, 1231

82. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

83. Petitioner is not subject to a final order of removal. The July 2023 expedited removal order was executed on July 31, 2023, and has not been

reinstated under 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8. Section 1231 therefore does not authorize his detention.

84. Petitioner was not placed in expedited removal proceedings in 2026. Section 1225(b)(1) therefore does not authorize his detention.

85. Petitioner was not seeking admission at the border when apprehended. Section 1225(b)(2)(A) therefore does not authorize his detention.

86. To the extent Respondents contend that Petitioner is detained under any provision other than § 1226(a), Respondents are detaining him without statutory authority, and he must be released.

## COUNT III

### Violation of the Due Process Clause of the Fifth Amendment

87. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

88. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas*, 533 U.S. at 690.

89. Petitioner has a fundamental liberty interest in freedom from official restraint.

90. Respondents' detention of Petitioner without statutory authority, and without any determination by any official that he is a flight risk or a danger to the community, violates Petitioner's right to due process of law.

**COUNT IV**

**Unlawful Seizure and Arrest — Fourth Amendment**

91. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

92. The Fourth Amendment protects Petitioner from unreasonable seizures. Immigration officers may not stop or seize a person absent specific, articulable facts giving rise to reasonable suspicion of unlawful presence, and may not arrest a person absent probable cause. Hispanic appearance and presence in a predominantly Latino neighborhood do not supply reasonable suspicion.

93. On information and belief, Respondents' officers seized and arrested Petitioner on August 10, 2026, without reasonable suspicion or probable cause, in violation of the Fourth Amendment. Petitioner's continued detention is the direct result of that unlawful seizure and arrest.

## COUNT V

### Unlawful Warrantless Arrest — 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii)

94. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

95. Under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), an immigration officer may arrest a noncitizen without a warrant only upon a particularized determination that the noncitizen is likely to escape before a warrant can be obtained.

96. Respondents' officers arrested Petitioner without a warrant and, on information and belief, without any determination, particularized or otherwise, that he was likely to escape before a warrant could be obtained. The arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), and Petitioner's continued detention is the direct result of that unlawful arrest. No warrant or custody determination issued after the arrest can supply the authority that was absent when it was made.

97. On information and belief, Petitioner is a member of the class certified in *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal.), of

persons arrested in this District without a warrant and without a prearrest, individualized determination of likelihood of escape since June 6, 2025.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

(a) Assume jurisdiction over this matter;

(b) Issue a writ of habeas corpus requiring that, within one day, Respondents release Petitioner;

(c) Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;

(d) Enjoin Respondents from re-detaining Petitioner, or imposing any other restriction on his liberty, without first providing notice and an opportunity to be heard before a neutral decisionmaker at which Respondents bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community;

(e) Declare that 8 U.S.C. § 1226(a)—and not 8 U.S.C. § 1225(b)(1), § 1225(b)(2)(A), or § 1231—governs Petitioner's detention, because Petitioner was apprehended in the interior of the United States, was placed in removal proceedings under 8 U.S.C. § 1229a, and is not subject to any final or reinstated order of removal;

(f) Award Petitioner fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(g) Grant any other and further relief that this Court deems just and proper.

Dated: September 28, 2026

Respectfully submitted,

/s/ Howard J. McClure
Howard J. McClure

Counsel for Petitioner

Howard J. McClure, Esq. #141046
Aubrey J. McClure Campbell, Esq. #313033
Howard J. McClure & Associates
743 N. A St.
Oxnard, CA 93030
(805) 278-6117 * Fax (805) 278-6119
Attorneys for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242 AND 28 U.S.C. § 1746**

I, Howard J. McClure, declare:

1. I am counsel for Petitioner, Anthony Castillo-Hernandez, in the above-captioned matter. Pursuant to 28 U.S.C. § 2242, I submit this verification on his behalf.

2. I have personal knowledge of the facts stated in the foregoing Petition based on my representation of Petitioner and my review of the record of his removal proceedings, and I am informed and believe that, as of the date of this verification, no order reinstating Petitioner's prior order of removal has been issued or served.

3. I have reviewed the foregoing Petition for Writ of Habeas Corpus and the accompanying exhibits. The factual statements therein are true and correct to the best of my knowledge, information, and belief, based on my personal knowledge and the records maintained in the ordinary course of my representation.

4. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 28, 2026, at Oxnard, California.

/s/ Howard J. McClure
Howard J. McClure
Counsel for Petitioner