**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY CASTILLO-HERNANDEZ,<br>Petitioner,<br>v.<br>WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-05743-MBK<br>ORDER GRANTING WRIT OF HABEAS CORPUS |

Petitioner Anthony Castillo-Hernandez, a citizen of Guatemala, is currently in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. For the past three years, Mr. Castillo-Hernandez has lived with his mother in Oxnard, California, after entering the United States without inspection in or about September 2023. Since arriving, Mr. Castillo-Hernandez has continuously lived at the same address and

worked for a staffing company. Mr. Castillo-Hernandez has no criminal history in the United States or elsewhere.

On August 10, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Mr. Castillo-Hernandez while he was walking near his apartment in Oxnard. The ICE officers did not show Mr. Castillo-Hernandez a warrant or provide an explanation for his warrantless arrest, or conduct an initial custody determination after taking him into custody. He was later transferred to the Adelanto Detention Facility, where he remains today. During his two months in detention, no Government official has conducted a custody determination, bond hearing, or any other determination that his ongoing confinement is justified.

In this habeas action, Mr. Castillo-Hernandez argues that his ongoing detention violates the Immigration and Nationality Act and the Due Process Clause, and his warrantless arrest violated the Fourth Amendment and 8 U.S.C. § 1357(a)(2). Respondents have filed an Answer in which they concede that Petitioner is subject to detention under 8 U.S.C. § 1226(a), but do not dispute that he has not been provided the procedural protections required by the statute. For the reasons that follow, the Court concludes that Petitioner is entitled to release because his detention violates 8 U.S.C. § 1226(a) and there is no basis for his continued detention.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Anthony Castillo-Hernandez is a citizen of Guatemala. Dkt. 1 at 9. He first entered the United States near Laredo, Texas, on July 20, 2023, but was apprehended by Border Patrol on the same day. *Id.* at 9-10. On July 24, 2023, Border Patrol issued him a Notice and Order of Expedited Removal on grounds of inadmissibility and a Notice to Alien Ordered Removed,

imposing a five-year bar on re-entry. *Id.* at 10. All of Petitioner's record checks were negative. *Id.* DHS removed Petitioner to Guatemala on July 31, 2023. *Id.*

In or about September 2023, Petitioner re-entered the United States without inspection. *Id.* By the end of 2023, Petitioner was living with his mother, Yaquelin Siomara Hernández López, in Oxnard, California. *Id.* Until his current detention, Petitioner has continuously resided at the same address with his mother. *Id.* at 10. Petitioner has also since registered with Our Lady of Guadalupe Catholic Church in Oxnard, whose pastor has confirmed in writing Petitioner's membership and residence at Petitioner's Oxnard address. *Id.* at 15-16. Petitioner found employment with a staffing company, which has issued him a W-2 form for tax year 2023 that listed the Oxnard address. *Id.* at 10. In November 2024, Petitioner enrolled in Medi-Cal using the Oxnard address. *Id.* at 11.

On August 10, 2026, after working a full day at a construction job, Petitioner was walking from his Oxnard apartment to a nearby McDonald's. *Id.* at 11. About twenty meters from his apartment, two vehicles without license plates stopped in front of and behind him. *Id.* Masked men carrying handguns exited the vehicles and grabbed him, handcuffed him, refused to identify themselves, and injured his finger in the process. *Id.* Petitioner did not resist. *Id.* The masked men did not present a warrant or provide an explanation throughout the arrest. *Id.* The masked men, who turned out to be Immigration and Customs Enforcement ("ICE") officers, later transferred Petitioner to the Adelanto Detention Facility in Adelanto, California. However, the officers did not make an individualized custody determination or otherwise provide Petitioner an opportunity to be heard why he should not be detained. *Id.* at 11, 13.

Nine days later, DHS issued Petitioner a Notice to Appear ("NTA") that initiated removal proceedings under 8 U.S.C. § 1229a. *Id.*; Dkt. 1-1 at 8-10. The NTA designated Petitioner as "an alien present in the United States." Dkt. 1-1 at 8. DHS did not allege that Petitioner was subject to expedited removal under 8 U.S.C. § 1225(b)(1), or serve any notice of intent to reinstate the July 2023 expedited order. Dkt. 1 at 12.

The Adelanto Immigration Court set an initial hearing in Petitioner's removal proceedings for September 1, 2026, but continued it on DHS's motion to September 15, 2026. *Id.* at 11-12. On September 10, 2026, DHS moved to dismiss the removal proceedings without prejudice, contending the NTA was "improvidently issued" because Petitioner was subject to an expedited removal order. *Id.* at 13; Dkt. 1-1 at 6. To its motion, DHS attached the 2023 expedited removal records. Dkt. 1 at 13. Petitioner was never served notice or otherwise provided an opportunity to contest that he is the subject of a prior order or that he was in fact removed by it. *Id.* at 14. The Immigration Judge ("IJ") granted the motion on September 15, 2026. *Id.* at 13-14. Petitioner timely appealed. *Id.* at 14. To date, DHS has not formally moved to reinstate Petitioner's prior order of removal, provided a Form I-871, or indicated that any immigration officer made the findings required by 8 C.F.R. § 241.8(a) to reinstate the removal order. *Id.* at 13.

Petitioner fears returning to Guatemala because he worked for a security company and was personally involved in the arrests of criminal organization members. *Id.* at 14-15. Petitioner also practices Mayan spirituality and has witnessed violence against Mayan practitioners during religious ceremonies. *Id.* at 15. Petitioner intends to seek protection from removal on these grounds, but has not yet had an opportunity to seek such release given the procedural posture of his immigration case. *Id.*

Petitioner filed the instant habeas action on September 28, 2026. Dkt. 1. Petitioner challenges his ongoing detention on the following grounds: (1) his detention is not authorized by 8 U.S.C. § 1226(a); (2) his detention is unauthorized because neither 8 U.S.C. § 1225(b) nor 8 U.S.C. § 1231 apply; (3) his detention without statutory authority violates the Due Process Clause; (4) his arrest without reasonable suspicion or probable cause violated the Fourth Amendment; and (5) his warrantless arrest without particularized determination of escape risk violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). *Id.* at 34-39. He requests immediate release and an injunction preventing his re-detention absent notice and a hearing where Respondents bear the burden of proving he is a danger or flight risk. *Id.* at 39.

Respondents filed an Answer on October 5, 2026. Dkt. 7. In their Answer, Respondents argue that Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), and is eligible for a bond hearing under 8 U.S.C. § 1226(a). *Id.* at 2. Respondents oppose any other relief because "Petitioner re-entered the United States without inspection after a recent prior removal, and an alleged fourth amendment arrest violation is not a basis for habeas release." *Id.* at 2. Aside from these assertions, Respondents do not provide any explanation or legal authority to support their position.

Petitioner filed a reply on October 8, 2026. Dkt. 9. Petitioner argues Respondents have conceded that Section 1226(a) is the governing authority yet have not provided any of the procedural protections it requires, that Respondents have conceded all other claims by not substantively opposing

them, and that the correct remedy is immediate release, not a bond hearing. *Id.* at 3-14.

## II. DISCUSSION

Petitioner argues, *inter alia*, that he is entitled to release because Respondents violated the Immigration and Nationality Act by arresting and detaining him without a warrant, an initial custody determination, or bond hearing under 8 U.S.C. § 1226(a). Dkt. 1 at 33-35. Respondents concede that Petitioner is subject to Section 1226(a) and do not dispute that they have failed to provide the procedural protections required by the statute. Dkt. 7 at 2. Accordingly, the Court concludes that Petitioner's detention has been unlawful from the outset and there is no justification for his ongoing detention.

### A. Detention under Section 1226(a)

Petitioner argues that his detention is not authorized by 8 U.S.C. § 1225(b) or 8 U.S.C. § 1231, and is authorized, if at all, by 8 U.S.C. § 1226(a). Dkt. 1 at 21-28. In their Answer, Respondents concede that Petitioner is subject to Section 1226(a) under the final judgment entered in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) and the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Dkt. 7 at 2. Because the parties agree that Petitioner's detention is authorized, if at all, under Section 1226(a), the Court begins by reviewing the custody procedures under the statute.

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a)

and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. at § 287.3(d).

Regardless whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person under Section 1226. 8 C.F.R. § 236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g).

The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review

DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19.

"If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id*. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id*. (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id*. The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

**B. Due Process Requires a Determination that Detention is Warranted under Section 1226(a)**

While Section 1226(a)'s "extensive procedural protections" arise from the statute and its regulations, they are also grounded in due process principles. The Supreme Court has recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id*. at 690-92. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *16 (9th Cir. Sept. 21, 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances its legitimate interests in preventing danger and flight. Unlike individuals subject to mandatory detention under Section 1226(c), Congress has not required the detention of individuals detained under Section 1226(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). Instead, Section 1226(a)

provides immigration authorities with the discretion to detain or release such individuals "pending a decision on whether" they are "to be removed from the United States." 8 U.S.C. § 1226(a). It follows that due process requires the Government to exercise this discretion and determine, on an individualized basis, whether to detain or release a noncitizen under the statute. Otherwise, a noncitizen subject to Section 1226(a) would be effectively subject to mandatory detention, in direct contravention of Congress's determination that detention under Section 1226(a) is not required. There would also be an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *7 (N.D. Cal. Oct. 15, 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk."). For these reasons, courts have found that noncitizens are "entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause." *Garcia-Maya*, 2026 WL 1965886, at *5; *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (discussing "the due process protections found within § 1226(a)").

This case implicates the "several layers" of process that are required for DHS to arrest and initially detain a noncitizen under Section 1226(a). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, the INA only authorizes immigration authorities to arrest an individual under Section 1226(a) with a warrant issued by certain designated supervisory officers or, in limited circumstances, without a warrant based on probable cause and a determination that the individual is likely to escape. For individuals taken into custody, the regulations require that DHS must conduct a prompt custody

review and, if it determines that detention is warranted, provide the individual an opportunity to request IJ review at a bond hearing.

These procedures serve several important due process purposes. The initial custody review ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also requires DHS to provide written justification for a decision to detain and "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original).

The initial custody determination is also the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8. Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr., et al.*, No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' ... including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.'") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937,

at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026). Without an initial custody determination, then, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

In light of the critical importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized that "section 1226(a) requires an individualized custody determination before detention and failure to do so is 'in itself [ ] a violation of [petitioner's] due process rights.'" *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight, et al.*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No.

1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

**C. Because Petitioner's Detention Has Been Unlawful from the Outset, He is Entitled to Release**

Petitioner alleges that ICE officers arrested him without a warrant or risk-of-escape analysis and failed to conduct an initial custody determination. *See* Dkt. 1 at 26, 35 (ICE officers "never issued the warrant [Section 1226(a) requires, and never made the custody determination it presupposes officers"; officers "displayed no warrant, asked [Petitioner] nothing that could bear on whether he was likely to escape before a warrant could be obtained, and laughed when he asked who they were"). Respondents do not dispute these allegations.

Based on these uncontested facts, the Court agrees with Petitioner that his arrest and detention violated 8 U.S.C. § 1226(a) and due process for the reasons discussed *supra*. The Court must determine, then, the proper remedy for the violation of Petitioner's rights. Respondents argue that, "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." Dkt. 7. at 2. However, as most courts to address this issue have concluded, the "failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.*, 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the

government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025). Petitioner has now been confined nearly two months without any determination that this lengthy detention is warranted. A bond hearing belatedly conducted at some point in the future is "'no substitute'" for initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an

unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Finally, Petitioner requests that the Court "[e]njoin Respondents from re-detaining Petitioner, or imposing any other restriction on his liberty, without first providing notice and an opportunity to be heard before a neutral decisionmaker at which Respondents bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community." Dkt. 1 at 39. Respondents do not address this requested relief. In light of Respondents' non-opposition, the Court concludes that this relief is warranted. Notably, Respondents do not argue that Petitioner is a danger or flight risk, or that there is any other basis for his continued detention. Nor does the record reveal any justification for Petitioner's detention, as he has a fixed address in the United States, a bond sponsor, and no criminal history. *See supra* Section I. As such, it is appropriate to prevent Petitioner's re-detention unless Respondents can show a material change in circumstances warranting his detention. *See Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437 (C.D. Cal. July 14, 2026) (discussing the due process limitations on re-detention). While Respondents are not prohibited from re-detaining Petitioner in the future, they may only do so if they comply with the requirements of Section 1226(a) and demonstrate there is a material change in circumstances warranting Petitioner's re-detention.[1]

---

[1] Because the Court concludes that Petitioner is entitled to release on his Section 1226(a) claim, it declines to address his alternative claims.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Anthony Castillo-Hernandez's (A# 246-933-341) immediate release and prohibiting his re-detention absent a hearing before a neutral decisionmaker at which the Government must show material changed circumstances justifying his detention; and (3) Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: October 9, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE